Filed 8/21/14 Moffett v. Lampe Group CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DONNA MOFFETT, | |
| Plaintiff and Appellant, | G049896 |
| v. | (Super. Ct. No. RIC10005567) |
| THE LAMPE GROUP, INC., et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Riverside County, Daniel A. Ottolia, Judge. Affirmed.

Law Offices of Robert K. Scott, Robert K. Scott, James W. Haines; Sina Law Group and Reza Sina for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Joseph C. Campo and Patrik Johansson for Defendants and Respondents.

\* \* \*

Donna Moffett sued defendants The Lampe Group, Inc. (Lampe) and Douglas Becker (collectively defendants) and Old Mutual Financial Life Insurance Company, Inc. (Old Mutual) regarding its rescission of the life insurance policy purchased by her mother, Barbara Sodders. Old Mutual previously sought and was granted summary judgment in its favor, and that decision is now final. The trial court concluded that rescission was proper because there were several misrepresentations on the application, and even after receiving the policy with the application attached, Sodders failed in her duty to correct the inaccurate information.

What remained after that ruling were claims for fraud and professional negligence against Lampe, the broker, and Becker, the agent. The trial court granted summary judgment in their favor, concluding it was undisputed Sodders had misrepresented several facts, and despite Moffett's attempt to blame Becker for the information on the application, she failed in her duty to correct the information. Thus, Sodders's actions rather than Becker's were the cause of any damages. Moffett now appeals, and for the reasons discussed below, we affirm.

I

FACTS

On July 24, 2008, Sodders met with Becker at her home for the purpose of applying for life insurance. She was approximately 67 years old at the time. Moffett was present during this meeting.

There are many disputes about what precisely occurred during this meeting, and Moffett argued that Becker's conduct was below the standard of care and/or fraudulent in numerous respects, including failing to provide Sodders with appropriate senior disclosures, failing to provide a conditional receipt, failing to disclose that premiums were not guaranteed to be level for 15 years, failing to provide the actual policy, having her sign a blank application, choosing a policy that did not require medical underwriting, failing to maintain notes from the meeting, and various other issues. What

2

is undisputed and important for purposes of the instant summary judgment motion is that during the meeting, Becker obtained extensive health information from Sodders. According to the first amended complaint (the complaint) and Moffett's separate statement of undisputed facts, Becker asked Sodders about her history of smoking. Sodders said that she had been a smoker but had stopped two years earlier. Becker told her that if she had ceased smoking for at least one year, she could answer "no" on the application.

Becker also asked Sodders if, in the past 10 years, it had been recommended to her to have any tests, treatment or surgery which had not been performed. Moffett testified at her deposition that Sodders answered "no."

The application also asked Sodders to state the date she last saw her doctor, the reason for the visit, and the results. The application lists Dr. Antonio A. Tan and his address. According to Moffett's deposition, her mother told Becker that she had seen Tan a couple of months ago, but did not say anything else about that visit.

The basic application was completed during that meeting on July 24, and Sodders's signature is on the application. On August 4, Old Mutual issued the policy, providing a $50,000 death benefit and listing Moffett as beneficiary. The contestability period of the policy was two years from the date of issue. The policy stated the contract between Old Mutual and Sodders included the application, which was attached to the policy. It stated further that Old Mutual "will rely on all statements made in an application." On August 30, Sodders accepted delivery of the policy, including the signed application. She signed a delivery receipt which stated, "By executing this Receipt, the Contract Owner further acknowledges that the insured's health and occupation have not changed since, and that the Insured's health remains exactly as stated in, the Application for insurance."

Sodders died on June 12, 2009, less than one year after the policy was issued. The cause of death was "septic shock in part due to the shutting down of her

3

bowels, and a malformation, congenital defect and/or diseased aortic opening." Moffett made a timely claim for benefits, and because the policy was within the contestability period, Old Mutual conducted an investigation into Sodders's medical history.

During this investigation, Old Mutual discovered several discrepancies. First, despite Sodders's statement to Becker that she had stopped smoking two years earlier, medical records revealed a different story. Tan's patient records from a visit in April 2008 stated that patient "continues to smoke 1 ppd." At his deposition, Tan confirmed that Sodders had told him she continued to smoke one pack per day. Moreover, on March 15, 2008, Sodders was seen by Dr. Raj K. Sindher at Raincross Medical Group, Inc., which was apparently an express care clinic. Sindher's notes under "impression" state "Smoker, COPD, Bronchitis" and under treatment instructions, among other things, Sindher stated "D/C Smoke."[1] Old Mutual would not have issued the policy at the same premium if it had known that Sodders had smoked within one year prior to the application date.

With respect to the question regarding any tests, treatments or surgeries had been recommended but not completed in the past 10 years, to which Sodders had answered "no," her medical records also showed that Tan had recommended she seek psychiatric help in 2004. Tan's records also showed that her most recent visit's purpose had not been disclosed. According to Tan's records, Sodders most recent visit had been about depression and anxiety, which was not disclosed to Becker. Both of these facts, according to Old Mutual, would have materially influenced their decision to issue the policy.

After further inquiries, in September 2009, Old Mutual sent Moffett a letter informing her of its decision to rescind the policy due to Sodders's misrepresentations and omissions on the application.

---

[1] It seems likely from the context that "D/C" stands for "decrease" or "discontinue."

4

Moffett filed an initial complaint in March 2010, filing the amended complaint in June. Against Old Mutual, Moffett alleged claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud. As to defendants, the complaint alleged causes of action for fraud and professional negligence. The complaint alleged, among other things, that Becker had failed to list all the medicines and medical conditions Sodders had disclosed. The complaint also asserted defendants assured Sodders that "MOFFETT, would receive the benefits of the policy if everything she disclosed to BECKER at the time of the application was truthful." In her prayer, Moffett alleges economic damages "for failure to provide [life][2] insurance benefits owed to MOFFETT under the Policy, plus interest . . . ."

In July 2011, Old Mutual moved for summary judgment, arguing the undisputed facts demonstrated the policy was properly rescinded, among other things. The trial court agreed, granting Old Mutual's motion in October. The court found Old Mutual "properly rescinded the life insurance policy. . . due to material misrepresentations and concealment," mostly of facts concerning her mental health and medications. Even if Becker had improperly recorded Sodders's responses, she had "a duty to correct the above misrepresentations and omissions upon her receipt of the policy and application." As relevant here, the court stated "the rescission of the policy is independently supported by Sodders's undisputed misrepresentation and concealment on the application of the true nature of her last physician visit by failing to disclose that it involved her depression and anxiety. The undisputed evidence shows that Sodders did not truthfully and accurately describe her last visit with Dr. Antonio Tan to Becker. It is undisputed that this misrepresentation and concealment was material to OM Life's decision to issue the policy. And as noted, this misrepresentation does not implicate Becker's conduct at all." Further, the court stated: "the rescission of the policy is

---

[2] The prayer actually says "disability" insurance, but we presume that was a typographical error.

independently supported by Sodders's misrepresentation and concealment in response to the application's Question 4.c. The undisputed evidence shows that Dr. Tan recommended to Sodders that she obtain psychiatric treatment, that Sodders never obtained such treatment, and that Sodders did not disclose these facts to Becker. It is undisputed that this misrepresentation and concealment was material to OM Life's decision to issue the policy. Once again, this misrepresentation does not implicate Becker's conduct at all." As far as we can tell, there was no appeal taken from the judgment duly entered in Old Mutual's favor.

In November 2011, defendants moved for summary judgment, arguing Moffett could not establish a causal link between her alleged damages and any conduct by defendants. Because the undisputed facts demonstrated that certain of Sodders's statements led to rescission, not any wrongdoing Becker may have committed, she could not establish the causation necessary for either a fraud or professional negligence claim. Defendants also argued Sodders had a duty to correct her application upon receipt of the policy, should it be necessary.

Moffett opposed, arguing Sodders did not misrepresent any facts and, Becker had knowledge of all relevant facts regarding Sodders's depression and anxiety. With respect to the uncompleted treatment question, Moffett argued the question was vague and ambiguous, asked a 67-year-old applicant to take her memory back over 10 years, and was overly burdensome. With respect to the last physician visit, Moffett denied Sodders had said it was a checkup, but did not deny that Sodders did not mention anxiety or depression.

Moffett additionally argued insurance agents are not immune for negligence, including negligently misrepresenting a policy's coverage. She stated Becker was negligent because he had Sodders sign a blank application. She also argued an agent could be liable for holding himself out as an expert or failing to deliver the agreed-upon coverage. She stated Becker failed to deliver such coverage because "Sodders requested

6

coverage that would pay benefits to her daughter in the event she passed away." In reply, defendants essentially argued that Moffett was rather desperately tap-dancing around the causation question.

The trial court granted the motion, concluding the following:

"1. The undisputed evidence shows that Ms. Sodders lied about her continued smoking to both [Defendants] and to [Old Mutal]. The undisputed evidence shows that this misrepresentation and concealment was material to [Old Mutual's] decision to rescind the policy.

"2. The undisputed evidence shows that Ms. Sodders did not truthfully and accurately describe her last medical visit to Dr. Tan to Douglas Becker. It is undisputed that this misrepresentation was material to [Old Mutual's] decision to issue the policy.

"3. The undisputed evidence shows that Dr. Tan recommended to Ms. Sodders that she obtain psychiatric treatment, that Ms. Sodders never obtained such treatment, and that Ms. Sodders never disclosed this to Becker. It is undisputed that this misrepresentation and concealment was material to [Old Mutual's] decision to issue the policy.

"4. Ms. Sodders had a duty to correct any misrepresentations in the application upon her receipt of the policy. Ms. Sodders failed to correct any of the misrepresentations in the application upon her receipt of the policy. Ms. Sodders, who failed to advise her insurer of the inaccuracies in the application, after signing and receiving the application, cannot avoid rescission by claiming that she had no knowledge of the misrepresentations in the application.

"5. Plaintiffs attempt to blame Becker for Sodders' misrepresentations is unavailing because it is undisputed that Becker had no involvement in at least three of Sodders' material misrepresentations. As such, even if Plaintiff's claims against Defendants were true, it does not impact [Old Mutual's] proper rescission of the policy and summary judgment.

7

"6. Ms. Sodders' lies, misrepresentations, and concealment, not the alleged conduct by Defendants, caused the rescission of the policy. Therefore, Plaintiff is unable to establish causation against Defendants."

Judgment was entered in April 2012. Moffett now appeals.

II

DISCUSSION

A. *Standard of Review and Relevant Law*

Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) "A prima facie showing is one that is sufficient to support the position of the party in question." (*Id.* at p. 851.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. [Fn. omitted.]" (*Id.* at p. 850.)

"We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.]" (*Herberg v. California Institute of the Arts* (2002) 101 Cal.App.4th 142, 148.)

*B. Defendants' Initial Burden*

As noted above, the party moving for summary judgment has the "initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.) The relevant causes of action here are fraud and professional negligence. The elements of a cause of action for fraud are: (1) a misrepresentation; (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) actual and justifiable reliance by the plaintiff; and 5) resulting damage. (Civ. Code, § 1709; *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1255; *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173.) For a professional negligence claim, a plaintiff must establish "(1) the duty of the professional to use such skill, prudence and diligence as other members of the profession commonly possess and exercise; (2) breach of that duty; (3) a causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional negligence.' [Citation.]" (*Loube v. Loube* (1998) 64 Cal.App.4th 421, 429.) Thus, both claims involve the element of causation — the fraud or negligence on defendant's part must be the cause of plaintiff's damage.

In the trial court, defendants argued Sodders made at least three material misrepresentations on the application, in which Becker had no part. These misrepresentations, therefore, led to Old Mutual's decision to rescind and Moffett's alleged damages — the lack of benefits from the policy.

We agree this argument is supported by undisputed evidence. Moffett's complaint and separate statement of facts both indicate Sodders told Becker she had stopped smoking two years earlier. Two sets of medical records indicate this was untrue.

With regard to the question about tests or treatment which had not been performed, Moffett testified at her deposition that Sodders answered this question "no." But Sodders's medical records indicated that Tan had recommended she seek psychiatric help in 2004. This was not disclosed.

9

As to Sodders's most recent doctor visit, Moffett testified at her deposition that her mother told Becker that she had seen Tan a couple of months ago, but did not say anything else about that visit. Tan's records indicated Sodders's most recent visit had been about depression and anxiety, which was not disclosed to Becker.

As to the materiality of these misstatements and omissions, defendants offered the declaration of Dennis Gunderson, Old Mutual's chief underwriter. Gunderson stated that if Old Mutual had known the truth about Sodders's smoking, anxiety and depression, it would not have issued the policy at the same rate.

Defendants also argued Sodders had an independent duty to correct the information discussed above once she received the receipt of the policy and application. We agree. "Even if [plaintiff] did not receive a copy until delivery of the policy, he was obligated at that time to correct any misstatements or omissions in the representations regarding his health. [Citations.]" (*Lunardi v. Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 820.)

We therefore conclude that defendants met their initial burden to show that Moffett could not prevail on either of her claims due to a lack of causation.

### C. Plaintiff's Evidence Regarding a Triable Issue of Material Fact

The burden now shifts to Moffett to demonstrate a triable issue of material fact. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.) Moffett's briefs on appeal depart from her arguments below. She now argues that the trial court's analysis was wrong because the issue is not whether Becker's conduct caused rescission of the policy, but whether it caused her damages for some other reason. This is an odd claim, because the only economic damages alleged in her complaint are "for failure to provide [life] insurance benefits owed to MOFFETT *under the Policy*, plus interest . . . ."[3]

_____

[3] She also alleges general damages for mental and emotional distress, but offers no theory under which such damages are recoverable without economic damages.

10

(Italics added.)  But even if we take Moffett's late-asserted claim of other damages seriously, she still fails to raise a triable issue of fact.

She argues a triable issue exists as to whether Becker failed to procure the agreed-upon coverage.  She argues:  "Sodders requested coverage that would pay benefits to her daughter in the event she passed away.  She had never purchased life insurance before.  She asked for coverage that was obtainable, in light of her health, medical history, and age.  Becker stated to her that he would get her a policy that covers her.  He had her sign a blank application.  He represented to her that he would properly fill out the application by using key terminology.  He specifically reviewed her bag of medications.  He took her money, leading her to believe she had secured life insurance benefits for Ms. Moffett."

What is confusing about this argument is that Becker did, indeed, obtain coverage for her.  This is undisputed.  She then claims the Old Mutual policy was "not the right policy."  She fails to offer any evidence at all that a better policy existed, however, and ignores the fact that if she had made the same misrepresentations, any other policy Becker procured might also have been rescinded.  Her argument here amounts to pure speculation and wishful thinking.  Moreover, the cases she cites are completely inapposite, addressing questions, for example, such as whether an agent misrepresented a homeowner's policy by telling the homeowner a certain policy would provide "100% coverage for the cost of repairs and/or replacement . . . including any and all increases in costs . . . in the event of a loss."  (See *Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1114.)  Here, in her own words, she requested coverage "that would pay benefits to her daughter in the event she passed away."  It is undisputed that such a policy was procured, and but for Sodders's misrepresentations, that policy would have paid benefits to Moffett.  She cannot simply sidestep the causation issue because it is unhelpful to her case.

11

Next, arguing that Becker misrepresented the policy, Moffett again argues that Becker had Sodders sign a blank application. She again claims he failed to take notes of the meeting, or fill out the application correctly. What this argument lacks, however, is any evidence of misrepresenting the policy itself. Moffett never claims, for example, that Sodders did not know the policy was for $50,000, did not understand the premiums, or other pertinent information. Again, the cases she cites have no relevance here. (See *Clement v. Smith* (1993) 16 Cal.App.4th 39, 45 [agent represents specific kind of loss would be covered by policy.]) The type of "loss" here was Sodders's death. That was, indeed, covered by the policy Becker obtained for Sodders.

Moffett's next assertion of a triable issue of fact is that Becker held himself out as a counselor. She again claims she relied on Becker to fill out the application properly. This again sidesteps the issue of causation in the three undisputed areas where Sodders gave Becker incorrect information. It does not raise an issue of material fact, given that her damages arise from the rescission of the policy.

With respect to the professional negligence claim, Moffett essentially makes the same arguments under the cloak of a different cause of action, citing her expert's testimony that Becker failed to use reasonable care, diligence and judgment in selling the life policy to Sodders. If the issues here were duty and breach, this testimony would be relevant. Because the issue is causation, it is not. Even if Becker committed the misdeeds Moffett claims, the only response is "so what?" The issues Moffett attempts to raise here are not relevant to the reasons for rescission, which is the proximate cause of Moffett's damages. The same applies to Moffett's brief argument regarding her fraud claim — she conveniently omits the undisputed areas in which Sodders failed to be honest in the information she provided.

In sum, we find Moffett has failed to raise any issue of triable fact with regard to either cause of action. Summary judgment was therefore properly granted.

III

DISPOSITION

The judgment is affirmed.  Defendants are entitled to their costs on appeal.



MOORE, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


FYBEL, J.