**NOT FOR PUBLICATION**

FILED

DEC 02 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   CC-16-1067-TaKuKi |
| STEPHANIE WHITE, | Bk. No.   2:14-bk-30940-NB |
| Debtor. | |
| STEPHANIE WHITE, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| MAS FINANCIAL, | |
| Appellee. | |

Argued and Submitted on September 22, 2016
at Pasadena, California

Filed – December 2, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Neil W. Bason, Bankruptcy Judge, Presiding

Appearances:    Steven L. Bryson argued for Appellant; Paul V. Reza argued for Appellee.

Before:   TAYLOR, KURTZ, and KIRSCHER, Bankruptcy Judges.

---

[*]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

**INTRODUCTION**

Debtor Stephanie White financed acquisition of a vehicle through an installment sales contract; Appellee MAS Financial ("MAS") asserts a claim based on this contract. The record is unclear as to what happened, but there is no question that MAS was never able to realize upon its collateral and that MAS, as a result, suffered a loss. After the Debtor commenced a chapter 7[1] case, MAS commenced an adversary proceeding alleging conversion of its collateral and seeking a nondischargeable judgment under § 523(a)(6). It later conceded that it could not prove the willful and malicious injury requirements of § 523(a)(6) given the Debtor's explanations as set forth in a proposed pretrial order. Thus, the parties stipulated to dismiss the case before trial, and the bankruptcy court entered an order approving the stipulation.

Thereafter, the Debtor sought to recover her attorney's fees. She asserted that her fees were collectible under California's Rees-Levering Automobile Sales Finance Act, California Civil Code ("CC") § 2981, et seq.

The bankruptcy court assumed, without deciding, that contractual attorney's fees were available and then determined that the Debtor was not a prevailing party and denied the fee request. If Rees-Levering governs the fee award here, however, unresolved questions exist. Under Rees-Levering, a stipulated

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

dismissal can be the basis for a fee award. In such a case, the court must determine which party, as a pragmatic matter, achieved success in the litigation. Here, MAS acquired nothing while the Debtor completely achieved her litigation goal as she avoided a nondischargeable judgment.

As a result, on remand the bankruptcy court must determine whether Rees-Levering governs the fee award. We are unable to do so on the record currently before us given discord in California Court of Appeal decisions about when Rees-Levering allows fee recovery and given language in the stipulated dismissal specifically reserving the Debtor's right to seek reasonable fees and costs after dismissal of the nondischargeability action and further stating: "attorneys fees and costs are governed under CA Civil Code Section 2983.4 of the Motor Vehicle Sales and Finance Act." The bankruptcy court, in the first instance, should interpret its own order. If the Rees-Levering Act is applicable here, additional findings are then necessary to support the bankruptcy court's decision that the Debtor was not the prevailing party in the nondischargeability action.

Therefore, we VACATE the order denying fees and REMAND to the bankruptcy court for further proceedings consistent with this decision.

**FACTS**

In 2011, the Debtor executed an installment sales contract for the purchase of a Lexus. The contract provided for a security interest in the Lexus and was assigned to MAS after execution. The Debtor eventually defaulted under the contract.

3

As a result, MAS obtained a state court default judgment for money due on the contract and unsuccessfully attempted to repossess its collateral. The record does not make the problem clear, but an accident or nefarious conduct left the Lexus extensively damaged.

Eventually, the Debtor filed a bankruptcy. MAS responded with an adversary proceeding, seeking to except $14,242.62 from discharge under § 523(a)(6). MAS did not argue that the entire state court judgment was nondischargeable. Instead, it argued that the Debtor willfully and maliciously converted the Lexus. Thus, it sought a nondischargeable judgment equal to the value of its allegedly converted collateral. The complaint alleged that the vehicle: "ha[d] been stripped and taken apart by the Debtor or persons acting at the direction of the [D]ebtor and that the [Debtor] herein exercised such custody and control as to cause the loss of the collateral."

Two weeks before trial, however, MAS agreed to dismiss the adversary proceeding. Its counsel later attested in a declaration that MAS could not prove the willful and malicious injury requirements as required by § 523(a)(6) based on the Debtor's explanations in a proposed pretrial order. The parties, thus, submitted a proposed joint stipulation to dismiss the case; the bankruptcy court entered an order approving it.

In relevant part, the parties agreed to the following in the stipulation:

• The sales contract was subject to the Rees-Levering Act;

• Attorney's fees and costs were governed by CC § 2983.4 of the Rees-Levering Act; and

4

• The Debtor reserved her right to seek reasonable fees and costs incurred in connection with her defense of MAS's nondischargeability claim.

Given these provisions, it is not surprising that the Debtor promptly sought to recover her attorney's fees and costs under CC § 2983.4. She asserted that she was the prevailing party in the adversary proceeding and that the parties agreed in the stipulation that the sales contract was subject to the Rees-Levering Act. As a result, the Debtor argued, she was entitled to fees under CC § 2983.4, and she sought fees in the amount of $22,300.92.

MAS opposed and argued that the nondischargeability action was based solely on a § 523(a)(6) claim for conversion, not the sales contract. The recovery, it pointed out, "was limited to the value of the vehicle at the time of the alleged conversion of $14,000.00." MAS never argued that the Debtor was not a prevailing party or that it was confident of victory. Instead, in an acknowledgment that occurred after the discovery cut-off date, it conceded that its "ability to prove the 'wilfull' [sic] and 'intentional' actions of the Debtor could not be met" based on the Debtor's representations in a proposed pretrial order. Bk. Dkt. No. 30 at p. 9 ¶ 8.

The bankruptcy court denied the fee motion. It stated that, "assuming without deciding that attorney fees could be awarded under the applicable contract (an issue that the Court does not reach)," there was no prevailing party. Bk. Dkt. No. 31 at p. 1. Even if there was a prevailing party, the bankruptcy court found that "no dollar amount of attorney fees

5

would be reasonable given the tasks performed." And it found that MAS agreed to dismiss the case

> [N]ot because of any lack of certainty about misconduct of the debtor, or about its ability to prove such misconduct if it had enough time and resources, but instead out of an unwillingness to throw good money after bad in pursuing a debtor that it had every reason to believe was dishonest, obstreperous, and unrepentant.

Id. at p. 2. Finally, to avoid further expense and delay, it concluded that a hearing on the matter was neither necessary nor appropriate given the clarity of issues; it, thus, vacated the hearing set forth on the matter.

The Debtor moved for reconsideration. She did not, however, frame her request within the context of Civil Rule 59, and she did not discuss any legal standards. Among other things, the Debtor argued that MAS had misrepresented the facts culminating in the disappearance of the Lexus and that the misrepresentation prejudiced the bankruptcy court in determining that there was no prevailing party in the adversary proceeding. She contended that she was the prevailing party given that MAS had dismissed its complaint and "took nothing."

The next day,[2] the bankruptcy court entered an order denying the motion for reconsideration. It clarified that it had not made any findings as to the underlying merits of the adversary proceeding and, instead, that in its initial ruling it solely found that the Debtor was not the prevailing party at the pretrial stage.

---

[2] Apparently, the Debtor did not set the motion for reconsideration for hearing.

6

The Debtor timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion when it denied the fee motion.

## STANDARD OF REVIEW

We review a bankruptcy court's decision regarding an award of attorney's fees for an abuse of discretion. See Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1063 (9th Cir. 2002).

A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## DISCUSSION

**A.  Procedural Issues**

**1.  Appealability of the Orders and Timeliness**

MAS, citing many California cases, argues that an order denying a motion to reconsider is not a final and appealable order. It also argues that the appeal was untimely, given that the Debtor filed her notice of appeal outside the 14-day time period established by Rule 8002. MAS is incorrect in both respects.

7

First, to the extent a denial of a motion to reconsider is considered interlocutory under California law (something that we do not determine), the same is not true under federal law. Such an order is a final and appealable order.

Second, the Debtor's timely-filed motion to reconsider appropriately tolled the time to appeal from the fee motion order. See Fed. R. Bankr. P. 8002(b)(1). Thus, the Debtor's appeal was timely as to either order.

**2.    Scope of Appeal**

Timeliness, however, is only one of the relevant questions here. The only order described in and attached to the Debtor's notice of appeal is the order denying reconsideration; she did not attach the order denying the fee motion. And she did not file an amended notice of appeal. Her statement of issues on appeal, however, refers both to statements made by the bankruptcy court in its order denying reconsideration and the basis for its underlying decision to deny fees. The Debtor further discusses the bankruptcy court's prevailing party determination in her opening brief. Thus, we infer that the Debtor also intended to appeal from the order denying the fee motion. See United States v. Arkison (In re Cascade Roads, Inc.), 34 F.3d 756, 761-62 & n.5 (9th Cir. 1994).

Here, Civil Rule 59, made applicable in bankruptcy proceedings by Rule 9023, applied. See, e.g., Alexander v. Bleau (In re Negrete), 183 B.R. 195, 197 (9th Cir. BAP 1995) (if a motion for reconsideration is brought within 14 days of entry of an order, the motion is governed by Civil Rule 59).

Civil Rule 59(e) allows for reconsideration only if the

8

bankruptcy court: "(1) is presented with newly discovered evidence that was not available at the time of the original hearing, (2) committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." Fadel v. DCB United LLC (In re Fadel), 492 B.R. 1, 18 (9th Cir. BAP 2013). "There may also be other, highly unusual, circumstances warranting reconsideration." Sch. Dist. No. 1J v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).

A party, however, may not use a motion for reconsideration "to present a **new** legal theory for the first time or to raise legal arguments which could have been raised in connection with the original motion. Also, a motion to reconsider may **not** be used to **rehash** the same arguments presented the first time or simply to express the opinion that the court was wrong." Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.), 344 B.R. 94, 103 (9th Cir. BAP 2006) (emphasis in original), aff'd and remanded, 277 F. App'x 718 (9th Cir. 2008).

Unfortunately for the Debtor, her motion to reconsider was not framed within the legal standards of Civil Rule 59. Nor does the Debtor distinctly and specifically address reconsideration in her opening brief on appeal. As a result, the Debtor effectively waived issues related to reconsideration on appeal. See Padgett v. Wright, 587 F.3d 983, 986 n.2 (9th Cir. 2009) (per curiam) (appellate courts "will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief").

Turning to the merits related to the bankruptcy court's

9

denial of the fee motion, we conclude that remand to the bankruptcy court is necessary given several ambiguities in the law and record.

**B.    To the extent that the Debtor was entitled to fees under the Rees-Levering Act, additional findings are necessary to support the bankruptcy court's determination that the Debtor did not prevail in the adversary proceeding.**

The Debtor contends that she was the prevailing party in the adversary proceeding and, thus, that she was entitled to attorney's fees under the Rees-Levering Act.  We agree with the Debtor that under the Rees-Levering Act it is likely that she prevailed in the adversary proceeding.  On this record, however, we cannot tell because the bankruptcy court determined, in a conclusory manner, that there was no prevailing party and, on reconsideration, that the Debtor did not satisfy her burden of showing that she was the prevailing party.  It did so based on a superficial evaluation of the motion and papers; there was no hearing or evidence taken on the matter.

The Rees-Levering Act governs the sales of motor vehicles based on "conditional sale contracts."  Enacted as a protective measure for consumers, the Act requires certain disclosures on a sales contract relating to costs, limits the amount and types of permitted charges, and establishes processes in the event of contract default.  The consumer-focused policy extends to litigation under the Act.  Civil Code § 2983.4 provides, in particular, that "[r]easonable attorney's fees and costs shall be awarded to the prevailing party in any action on a contract . . . subject to the provisions of [the Rees-Levering Act]

10

regardless of whether the action is instituted by the seller, holder or buyer."

The Rees-Levering Act does not define "prevailing party." As a result, the courts are directed to "adopt a pragmatic approach" in making this determination, "based on which party succeeded on a practical level." Graciano v. Robinson Ford Sales, Inc., 144 Cal. App. 4th 140, 150 (2006); see also Heather Farms Homeowners Ass'n v. Robinson, 21 Cal. App. 4th 1568, 1574 (1994) (in the context of CC § 1354, the test for a prevailing party is a pragmatic one, namely whether a party prevailed on a practical level by achieving its main litigation objectives). This inquiry is based on "the extent to which each party has realized its litigation objectives, whether by judgment, settlement or otherwise." Graciano, 144 Cal. App. 4th at 150-51. Instructed to reject form over substance, the courts, instead, should be guided by equitable considerations. Id. at 151.

Further, in a Rees-Levering situation fees may be awarded where the parties enter into a stipulated judgment. See Damian v. Tamondong, 65 Cal. App. 4th 1115, 1119 (1998) (voluntary dismissal does not preclude a CC § 2983.4 fee award); see also Kim v. Euromotors W./The Auto Gallery, 149 Cal. App. 4th 170, 178-80 (2007) (California Code of Civil Procedure § 1032 defines prevailing party as including a "defendant in whose favor a dismissal is entered" when evaluating fee recovery under California's fee shifting consumer statutes). In this respect, a Rees-Levering fee award is different from an award under non-remedial California statutes such as CC § 1717, which

11

specifically states that there is no prevailing party when an action on a contract is voluntarily dismissed or dismissed pursuant to a settlement. See Cal. Civil Code § 1717(b)(2).

Here, the bankruptcy court summarily concluded that there was no prevailing party in the adversary proceeding and, on reconsideration, that the Debtor failed to meet her burden in showing that she prevailed. On this record and without first determining whether the adversary proceeding was an action on the sales contract and, thus, subject to the Rees-Levering Act, this was error. The relevant inquiry under California law is not focused on the victor after a trial; instead, it focuses on whether a litigant achieved their litigation goals. Notwithstanding that the case was dismissed before trial, it appears that the Debtor prevailed in the nondischargeability action under the required pragmatic approach; she got all of the relief she would have obtained if successful at trial. This is particularly true where counsel for MAS conceded in a declaration that MAS could not establish the § 523(a)(6) requirements at trial. See Bk. Dkt. No. 30 at p. 9 ¶ 8.

Heather Farms does not change the calculus here. There, a homeowners association filed an action against a homeowner based on allegations of unauthorized modifications to the homeowner's units. That lawsuit spawned several related actions. Eventually and following a settlement conference with a settlement judge, numerous parties entered into a settlement resolving the litigation and the association dismissed its action against the homeowner pursuant to the settlement. The settlement judge expressly found, however, that there were no

12

prevailing parties with respect to case dismissal given that the "dismissal [was] part of an overall complex piece of litigation . . . resolved by negotiated settlement. There [were] no winners. There [were] no favorable parties in [the] case." 21 Cal. App. 4th at 1571.

The trial court denied the defendant's subsequent motion for fees under CC § 1354[3] based on his assertion that he was the prevailing party. On appeal, the California Court of Appeal affirmed. Adopting the pragmatic standard for determining prevailing party, it concluded that there was no reason to doubt the prevailing party determination of either the settlement judge or the trial court. It noted that the association voluntarily dismissed its action against the homeowner "as part of a global settlement agreement, not because [the defendant] succeeded on some procedural issue or otherwise received what he wanted. That dismissal apparently was more the result of the [defendant's] obdurate behavior rather than any successful legal strategy." Id. at 1574.

Here, once again, it would appear that the Debtor prevailed on a practical level in the adversary proceeding. As stated, she avoided a nondischargeable judgment while MAS took nothing. And it appears that she did so not just because of her settlement with MAS but also because MAS conceded that it could

---

[3] CC § 1354 related to covenants and restrictions governing a residential planned unit development; it also provided for reasonable fees and costs to a prevailing party in an action to enforce the governing documents. The statute was repealed by Stats. 2012, c. 180 (A.B. 805), § 1, operative Jan. 1, 2014.

not establish its only claim against the Debtor. Thus, <u>Heather Farms</u> appears to be distinguishable on the facts.

**C.   The bankruptcy court must determine if the Rees-Levering Act applied here.**

Three issues arise, however, that lead us to conclude that the bankruptcy court must determine in the first instance whether the nondischargeability action was an action on the underlying sales contract between the parties, such that the Debtor was entitled to fees under the Rees-Levering Act.[4]

First, the California case law points in various directions. On the one hand, it limits fee recovery such that this case would fall well outside Rees-Levering's fee recovery statute. On the other, it broadly allows fee recovery when a contract governed by Rees-Levering is involved.

In <u>Davis v. Ford Motor Credit Co.</u>, 179 Cal. App. 4th 581 (2009), a panel of the California Court of Appeal held that for a prevailing party to avail themselves of the Act's reciprocal fee provision, the underlying complaint must allege a violation under the Rees-Levering Act. In <u>Davis</u>, the prevailing defendant moved for attorney's fees under CC § 2983.4. The complaint had alleged several violations of California law, including

---

[4]   Whether a debtor can recover fees and costs under CC § 2983.4 in a nondischargeability action appears to be a matter of first impression in this circuit. Thus, we are not assisted by Ninth Circuit authority. Indeed, there are only two unreported federal cases citing to CC § 2983.4. <u>See</u> <u>Wright v. Gen. Motors Acceptance Corp.</u>, 2012 WL 1416146 (S.D. Cal. Apr. 23, 2012); <u>Wright v. Gen. Motors Acceptance Corp.</u>, 2012 WL 253157 (S.D. Cal. Jan. 25, 2012), <u>aff'd</u>, 545 F. App'x 686 (9th Cir. 2013).

14

violations under the Rees-Levering Act, which it asserted constituted unlawful business practices under California unfair competition law.  The trial court denied the motion for fees.

On appeal, the California Court of Appeal determined that "although the underlying transaction was subject to the provisions of Rees-Levering, the action was not prosecuted under Rees-Levering."  179 Cal. App. 4th at 601.  Instead, "the alleged Rees-Levering violation was merely a predicate to the complaint's UCL claims."  Id.  The court of appeal, thus, concluded that "Rees-Levering's reciprocal fee provision [was] inapplicable" where the "alleged Rees-Levering violation [was] merely a predicate to the UCL claim . . . ."  Id.

Here, the adversary complaint made absolutely no reference to the Rees-Levering Act and did not allege a violation thereunder.  Instead, it alleged solely that the Debtor willfully and maliciously injured MAS by causing damage to her vehicle (MAS's collateral).  Nor did the Debtor plead an affirmative defense relating to the Rees-Levering Act in her answer to the adversary complaint.

Thus, under Davis, the failure to allege a violation under the Rees-Levering Act would be fatal to a claim for attorney's fees pursuant to CC § 2983.4.

At oral argument, the Debtor argued that Cobian v. Ordonez, 103 Cal. App. 3d Supp. 22 (1980), supported her position that she was entitled to attorney's fees under CC § 2983.4.  In Cobian, a California Superior Court stated that "[u]nder [CC §] 2983.4 the action need only be **on a contract subject to the Re-Levering Act** [sic], not an action to **enforce** such a

15

contract." 103 Cal. App. 3d Supp. at 31 (emphasis in original). We give little weight to Cobian, however, as it is a decision from the Appellate Department of a California Superior Court; as a result, it does not supersede or equal the precedential or persuasive value of the California Court of Appeal decision in Davis.

Another court of appeal case, however, is consistent with the Debtor's position. In Leaf v. Phil Rauch, Inc., 47 Cal. App. 3d 371 (1975), a panel of the California Court of Appeal held that the prevailing plaintiffs were entitled to attorney's fees under CC § 2983.4 in an action for restitution where the plaintiffs previously obtained rescission of the underlying sales contract based on breach of warranty. In doing so, the panel determined that the restitution action involved the underlying sales contract subject to the Rees-Levering Act and, thus, fell within the scope of CC § 2983.4 for the purposes of awarding fees.

Here, MAS's claims of waste and conversion could involve the underlying sales contract as the contract provided for MAS's rights to the vehicle as collateral and required the Debtor to maintain the vehicle during the finance period. Under Leaf, this could be sufficient to assert a claim for attorney's fees under CC § 2983.4. We note that where one or more decisions of the California courts of appeal are in conflict, a trial court is instructed to "make a choice between the conflicting decisions." Auto Equity Sales, Inc. v. Super. Ct. of Santa Clara Cty., 57 Cal. 2d 450, 456 (1962). Were the discord in California case law the only issue, we might undertake this

analysis, but other ambiguities exist.

Second, MAS argues that the nondischargeability action was not an action on the sales contract because the § 523(a)(6) action arose under the Bankruptcy Code. At first blush, this argument is compelling. The sales contract was in the background of the facts alleged in MAS's tort claim against the Debtor. There was no dispute with regard to improper charges or disclosures or MAS's rights to the collateral. Given that MAS's rights to the collateral arose under the sales contract, however, it is possible that the sales contract was more than a penumbral aspect of the nondischargeability action. To determine whether conversion existed for the purposes of § 523(a)(6), the bankruptcy court would have to determine MAS's rights to the collateral; the latter is strictly a contractual issue. Our unwillingness to affirm on this basis is supported by the stipulation between the parties that expressly provides that the sales contract was subject to the Rees-Levering Act and the fees were governed by Rees-Levering.

Third, and most importantly, an ambiguity exists in the stipulation itself. Again, in relevant part, it provided that the sales contract was subject to the Rees-Levering Act and that attorney's fees were governed by Rees-Levering. Although the parties could not stipulate to an improper application of the law, it was possible that they could agree as to how an ambiguous statute would be interpreted. At oral argument, the parties disagreed vociferously on their intent in including this provision in the stipulation. Given that the bankruptcy court approved the stipulation in the face of this ambiguity, it is

17

appropriate that it determine in the first instance the meaning of this provision.

For the reasons stated, remand is required. On remand, the bankruptcy court should determine whether the adversary proceeding was an action on the sales contract within the meaning of CC § 2983.4 and the impact, if any, of the fee provision in the stipulation between the parties on the determination of the appropriateness of a fee award.

The bankruptcy court also determined that no amount of fees would be appropriate. It made this determination, however, after making its prevailing party determination and did not support it with any findings. It arguably does not reflect a conclusion regarding the quality of the lawyering in the case. Nor does the determination appear logical; given the case dismissal result, the Debtor, at a minimum, would be entitled to recover reasonable fees related to answering the adversary complaint and preparing the proposed pretrial order. If the bankruptcy court concludes that the Debtor is a prevailing party, it can and should evaluate the reasonableness of the requested fees.

**CONCLUSION**

Based on the foregoing, we VACATE the order denying the fee motion and REMAND for further proceedings consistent with this decision.